1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GORDON & REES LLP**
ALLISON L. JONES (SBN 162976)
633 West Fifth Street
52nd Floor
Los Angeles, CA 90071
Telephone:  619-230-7712
Facsimile:  619-696-7124
ajones@grsm.com

Attorney for Petitioner, the Trial Lawyers College

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN THE MATTER OF SUBPOENA
DUCES TECUM TO ADRIAN BACA

THE TRIAL LAWYERS COLLEGE, a
nonprofit corporation,

                              Petitioner.

THE TRIAL LAWYERS COLLEGE, a
nonprofit corporation,

                              Plaintiff,

     v.

GERRY SPENCES TRIAL
LAWYERS COLLEGE AT
THUNDERHEAD RANCH, a
nonprofit corporation, and GERALD
L. SPENCE, JOHN ZELBST, REX
PARRIS, JOSEPH H. LOW, KENT
SPENCE, DANIEL AMBROSE, and
JOHN JOYCE, individuals,

                              Defendants.

Case No. 2:21-CV-04724

**PETITIONER, THE TRIAL
LAWYERS COLLEGE'S
MEMORANDUM OF POINTS OF
AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL ADRIAN
BACA TO COMPLY WITH
SUBPOENA *DUCES TECUM***

[Notice of Motion and Motion to
Compel; Exhibits 1-13; Declaration of
Matthew R. Slaughter; and [Proposed]
Order Filed Concurrently]

Hearing Date:
Hearing Time:
Judge:
Location:

Underlying Action Filed: May 13, 2020
(D. Wyo.)

# **TABLE OF CONTENTS**

**Page**

I.    FACTUAL BACKGROUND ..................................................................... 1

    A.    The Underlying Action ........................................................... 2

    B.    Discovery in the Underlying Action ....................................... 7

    C.    Baca's Involvement as a Fact Witness in the Underlying Dispute........ 9

    D.    The Subpoena to Adrian Baca ............................................. 11

    E.    TLC's Attempts to Informally Resolve Baca's Objections ................. 12

II.   LAW AND ARGUMENT ...................................................................... 17

    A.    Legal Standard ..................................................................... 17

    B.    Analysis................................................................................ 19

    1.    Baca's Objections are Untimely and are Therefore Waived .............. 20

    2.    Baca's Boilerplate Objections are Waived ......................................... 20

    3.    Baca's Pre-Conference Demands are Legally Untenable................... 22

    4.    TLC's Requests are Relevant and Narrowly Tailored........................ 23

III.  CONCLUSION ..................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazing Insurance, Inc. v. DiManno*,
No. 19-1349,
2020 WL 5440050 (E.D. Cal. Sept. 10, 2020) ............................................. 19, 21

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ................................................................. 18

*Cornell v. Columbus McKinnon Corp.*,
No. 13-2188,
2015 WL 4747260 (N.D. Cal. Aug. 11, 2015) ............................................ 22, 23

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) ....................................................... 18

*Hickman v. Taylor*,
329 U.S. 495 (1947) ..................................................................... 18

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ..................................................................... 18

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ........................................................... 20

*Robinson v. City of Ark.*,
No. 10-1431,
2012 WL 1674255 (D. Kan. May 14, 2012) ............................................ 19, 21

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) ..................................................................... 18

*Sprint v. Nextel Corp. v. Ace Wholesale, Inc.*,
No. 14-2119,
2015 WL 3649623 (D. Nev. June 10, 2015) .................................................. 18

*Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*,
Civil Action No. 1:20-cv-0080 (D. Wyo.) ..................................... 2, 5, 6, 7, 9, 10

*Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*,
813 F.2d 1207 (Fed. Cir. 1987) ......................................................... 18

*Walker v. Lakewood Condo. Owners Ass'n*,
186 F.R.D. 584 (C.D. Cal. 1999) .................................................... 19, 21

**Statutes**

15 United States Code
Section 1114 ............................................................................ 2

15 United States Code
    Section 1125 ........................................................................................ 2, 10

28 United States Code
    Section 2201 ............................................................................................. 2

**Rules**

Federal Rules of Civil Procedure
    Rule 26 ..................................................................................... 17, 18, 19

Federal Rules of Civil Procedure
    Rule 45 ............................................................................ 18, 20, 22, 23

Wyoming District Court Local Rule
    Rule 37.1 ............................................................................................ 8, 15

**Regulations**

8B Wright, Miller & Marcus, Federal Practice & Procedure, § 2288 (3d ed. 2010
    and supp.) .......................................................................................... 22

Petitioner, the Trial Lawyers College ("TLC"), appearing through undersigned counsel, respectfully submits this Memorandum in Support of its Motion to Compel Adrian Baca to produce all documents responsive to the subpoena served on him by TLC on April 2, 2021, pursuant to Federal Rule of Civil Procedure 45. Because the documents TLC requests are relevant to its claims in the underlying suit and Baca, a practicing attorney, cannot meet his burden of proving that compliance with the subpoena imposes an undue burden or that any documents responsive to TLC's lawfully-issued subpoena are subject to any kind of privilege, TLC respectfully submits its Motion to Compel should be granted and that Baca be ordered to produce all responsive documents in full.[1]

## I.     FACTUAL BACKGROUND

TLC issued a subpoena seeking documents directly relevant to its claims in the underlying lawsuit on April 2, 2021. To date, and despite TLC's good faith attempts to informally resolve this dispute, Baca has refused to meet and confer with TLC and, although he has produced five documents responsive to TLC's requests,[2] Baca has refused to produce the remaining documents he admits are responsive to the subpoena.

---

[1]  TLC notes that it will also file a corresponding Motion to Transfer this issue to the Wyoming court where the underlying matter is being adjudicated.
[2]  Notably, two of these five documents are photographs of a Christmas wreath and a vial of facial serum.

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITIONER'S MOTION TO COMPEL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A. The Underlying Action

The underlying action giving rise to this Motion is pending in the U.S. District Court for the District of Wyoming, where, on May 13, 2020, TLC sought injunctive, monetary, and declaratory relief pursuant to the Declaratory Judgment Act,[3] based on the underlying Defendants' various violations of the Lanham Act,[4] through their infringement of TLC's federally-registered trademarks, and other claims all based on the underlying Defendants' unauthorized access and repeated misuse of TLC's confidential computer files (the "underlying action").[5]

The Court in the underlying action explained the dispute between TLC and the underlying Defendants as follows:

Plaintiff [TLC] is a nonprofit corporation that provides training programs to lawyers. Defendant Gerald L. Spence founded Plaintiff in 1993 and has been affiliated with it since that time. The other individual Defendants have also been affiliated with Plaintiff since the 1990s. Plaintiff began operating in 1994 at the Thunderhead Ranch in Dubois, Wyoming. In 2012, Plaintiff applied for and received two federally-registered trademarks. The first, Registration Number 4,197,908 (the '908 Mark) is a trademark for "TRIAL LAWYERS COLLEGE" in

---

[3]   28 U.S.C. § 2201.

[4]   15 U.S.C. §§ 1114 and § 1125(a).

[5]   *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (hereinafter the "underlying action").

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITIONER'S MOTION TO COMPEL

2

standard characters, without claim to any particular font, style, size, or color. The second, Registration Number 4,198,054 (the '054 Mark) is a trademark for a stylized design of a cloud with a bolt of lightning. Plaintiff has maintained and used these trademarks in interstate commerce. Plaintiff further has policed the use of the trademarks.

Until May 6, 2020, Defendants undisputedly served on Plaintiff's Board. Plaintiff alleges that the individual Defendants sought to expend Plaintiff's funds to build a library in Gerry Spence's honor on the land Plaintiff leased. In December 2019 the Board declined to support the proposal to build the library on land it did not own. Defendant Spence, through the Spence Foundation, terminated Plaintiff's lease [at the Thunderhead Ranch]. Plaintiff vacated the premises.

[On April 30, 2020,] Defendants registered Defendant "Gerry Spence's Trial Lawyers College at the Thunderhead Ranch" as a Wyoming nonprofit corporation. Defendants accessed Plaintiff's listservs and used that information to create a new listserv to send mass emails to recipients whose information they obtained from Plaintiff's listservs. Defendants sent the new listserv recipients an email from "Gerry Spence's Trial Lawyer College" stating that the old listserv was experiencing difficulties and that Gerry Spence authorized a new listserv. Defendants also posted a video on YouTube which used both the '908 and the '054 Marks. The

video displays the '054 Mark in the left corner. In the video, Spence says, "my vision, my friends, for this college, is you. And it will stay alive and beautiful and ringing across the land, as long as you're there. . . . Some people think that Trial Lawyers College is over. Well, I'd like you to know a marvelous secret. It's a secret for some, but now, you know it too. Trial Lawyers College is going to continue. It's going to continue with marvelous new leadership."

On May 6, 2020, the Board split. Defendant Rex Parris testified that this occurred because of half the Board's treatment of Gerry Spence. Plaintiff claims that Defendants were not elected to the Board as of May 6. Defendants dispute the validity of Plaintiff's actions and claim to be the rightful Board—or at least still members of the full Board. Defendants sent an email to the new listserv on that date stating that the individual Defendants were Plaintiff's new Board. Notably, at least according to Defendant Parris's testimony, this position has evolved. Defendant Parris testified that Defendants and Plaintiffs were still board members as of this time. So Defendants appear to have abandoned the idea that they are the "new" board—at least for the time being. On May 12, 2020, Defendants sent an email on the new listserv advertising a speaker in which Plaintiff contends Defendants were attempting to pass off

1  Defendant Gerry Spence's Trial Lawyers College as Plaintiff.[6]

2

3  On October 21, 2020, the underlying Defendants filed a third party complaint

4  against TLC and its board members (the "TLC Board") in the underlying action.[7] In

5  their third party complaint, the underlying Defendants maintain their position that they

6  are, in fact, the true members of the TLC board and that, during a "Special Meeting of

7  the Board held on July 14, 2020," they had elected Baca along with Hunter Thomas

8

9  Hillin, Lee "Jody" Amedee III, Hatham Faraj, and Sylvia Torres-Guillen to the board

10  (the "Sham Board"), thereby replacing the TLC Board as TLC's board members.[8]

11

12  On April 28, 2020, the underlying Defendants filed a complaint in Wyoming

13  state court against TLC, seeking to dissolve and audit TLC and to have the state

14  court appoint a receiver to oversee and manage TLC's funds.[9] On April 13, 2021,

15

16  the Wyoming state court found the TLC Board to be "the controlling Board of

17  Directors of TLC" and that the vote to reduce the number of directors held on May

18  6, 2020—after which the underlying Defendants were not reelected as board

19

20  [6] *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_46, at 1–3) (order granting in part TLC's Motion for Preliminary Injunction).

21

22  [7] *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_102) (naming John Sloan, Anne Valentine, James R Clary, Milton Grimes, Maren Chaloupka, Dana Cole as third-party defendants in the underlying action).

23

24

25  [8] *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_102, at ¶¶ 8–13) (alleging the Third Party Defendants were either never lawfully elected to the TLC board or that they had been replaced during the special board meeting by Hillin, Baca, Amedee, Faraj, and Torres-Guillen, i.e. the Sham Board).

26

27

28  [9] *Spence v. the Trial Lawyers College*, (D. Wyo., No. 193-390).

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITIONER'S MOTION TO COMPEL

5

members of TLC—to be a valid exercise of the TLC Board's authority.[10]  As such, as a matter of law and despite the underlying Defendants' assertions, Baca and the other Sham Board members were never elected to the TLC Board, and any assertions by Baca or the underlying Defendants to the contrary violate the existing orders of the Wyoming Court.

Since TLC originally filed suit against the underlying Defendants on May 13, 2020, the Wyoming Court has granted TLC's Motion for a Temporary Restraining Order,[11] TLC's Motion for Preliminary Injunction,[12] and recommended that several of the underlying Defendants be held in civil contempt for violating the Court's preliminary injunction order, also recommending TLC be awarded attorneys' fees and costs "as is just and proper."[13]

On March 30, 2021, TLC served subpoenas on the individuals the underlying Defendants alleged to have "elected" to the TLC board, including Baca. Related to these subpoenas, and as is discussed more fully in TLC's concurrently-

---

[10]  *See* Order Consolidating Cases, Granting in Part and Denying in Part Motion to Dismiss and For Summary Judgment and Granting Declaratory Relief, attached hereto as **Exhibit 1** (Wyo. State Court Apr. 13, 2021 Order).  The state court also held that the two members of the TLC board the underlying Defendants alleged were either not properly elected to the board or had resigned, Maren Chaloupka and Dana Cole, are current members of the TLC Board.

[11]  *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_27).

[12]  *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_46, at 18–19).

[13]  *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_76).

filed Motion to Transfer, Defendants in the underlying matter have recently taken the position that all of the individuals "elected" to the Sham Board in July 2020 share a "common interest" with the underlying Defendants. Because the underlying Defendants are now seeking to withhold relevant documents in the possession non-parties pursuant to this purported privilege, on May 28, 2021, the Wyoming Court ordered the underlying Defendants to file a brief on that issue by June 4, 2021.[14] That same day, May 28, 2021, one of underlying Defendants' attorneys, Beth Kushner, advised TLC that as of that day, she now also represents Baca, Hillin, Faraj, and Torres-Guillen in connection with the subpoenas TLC issued to them.[15]

## B. Discovery in the Underlying Action

In the underlying action, TLC has propounded several sets for requests for production to the underlying Defendants. However, their responses have been largely evasive or otherwise incomplete.[16]

For instance, TLC propounded discovery to the underlying Defendants seeking information related to the listservs associated with Gerry Spence Trial Institute ("GSTI") (f/k/a/ Gerry Spence's Trial Lawyers College at Thunderhead

---

[14] *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_175).

[15] Various E-mail Correspondence with Beth Kushner, attached hereto as **Exhibit 2**, at pg. 5 (Kushner E-mail Correspondence).

[16] In an effort to avoid overwhelming the Court with voluminous discovery responses and production, TLC has not attached the applicable discovery documents referenced in this section. However, TLC is able to supplement this motion with additional discovery exhibits if the Court would find them helpful in deciding this Motion.

Ranch ("GSTLC")). Despite Defendant Kent Spence's deposition testimony that the underlying Defendants have used a listserv service that remains "up and running," Defendants have nevertheless maintained that they do not control (or have administrative privileges for) the various GSTI/GSTLC listservs that have been in active operation since April 2020, and thus will not provide TLC with information or documents pertinent to the maintenance of those listservs. Although Defendants have produced a handful of documents they purport to have received at their personal e-mail addresses, and those documents make Baca's continued involvement with the underlying Defendants clear, because the underlying Defendants have taken the position that they do not control the listserv, TLC is unable to obtain all of Baca's relevant listserv postings from Defendants. Accordingly, it served a subpoena on Baca seeking the same.

Similarly, TLC sought materials from the underlying Defendants related to a potentially unlawful trial skills training program Defendants apparently plan to offer in August and September 2021. In response to TLC's document request, Defendants produced materials from only one custodian—underlying Defendant John Zelbst. Given the obvious deficiencies with this production, TLC is currently proceeding with the informal discovery resolution process the District of Wyoming's Local Rules require.[17] Plainly, a production limited only to Zelbst

---

[17]   Pursuant to Wyoming District Court Local Rule 37.1, the parties are required to first contact the presiding Magistrate Judge in order to resolve the discovery

necessarily excludes any relevant, responsive communications that any other Defendant has in his possession, custody, or control on which Zelbst was not included. However, even the underlying Defendants' limited production again demonstrates Baca's clear and continued involvement in the underlying dispute. The requested, but unproduced documents are plainly relevant to TLC's infringement claims, and TLC is entitled to any such documents in Baca's possession, custody or control.

### C. Baca's Involvement as a Fact Witness in the Underlying Dispute

As the court in the underlying action explained, on April 30, 2020, the underlying Defendants registered Defendant "Gerry Spences Trial Lawyers College at the Thunderhead Ranch" as a Wyoming nonprofit corporation, and on May 6, 2020, the TLC Board split.[18]  Thereafter, on July 11, 2020, Defendant Parris sent several e-mails, attaching a purported "notice of a special board meeting called by the President [of TLC] Gerry Spence" stating that Baca, along with Hillin, Amedee, Faraj, and Torres-Guillen, had been nominated to the TLC Board.[19]  Documents produced by Defendants in this action, as well as the deposition testimony of Defendants Joseph Low and John Zelbst, unequivocally show that, since the

issues informally before being allowed to file a motion to compel, which Plaintiff did on May 21, 2021. Those issues remain pending with the Magistrate Judge in Wyoming.

[18] *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_46, at 1–3) (order granting in part TLC's Motion for Preliminary Injunction).

[19] E-mail from Rex Parris, attached hereto as **Exhibit 3** (Board Nomination E-mail).

underlying Defendants held the purported "Special Board Meeting" on July 14, 2020, Baca and the underlying Defendants continued to falsely hold out Baca, Hillin, Amedee, Faraj, and Torres-Guillen, as elected members of the TLC Board. As TLC alleges in its Complaint, Defendants' actions in deceitfully holding out themselves and others, including Baca, as the TLC Board, has caused confusion among the TLC alumni and the public, thereby directly engaging in unfair competition, false designation of origin, passing off, and false advertising under Section 43(a) of the Lanham Act.[20]

And, as briefly explained above, the documents TLC has received from the underlying Defendants through discovery (and indeed the underlying Defendants' own allegations and asserted "common interest" with the other individuals they purport to have elected to the TLC Board in July 2020) demonstrate that Baca is a fact witness to the underlying litigation with potentially relevant documents in his possession.   Specifically, the underlying Defendants' third party complaint contends, "Counterclaim Defendant Milton Grimes is an individual residing in or near Los Angeles, California. He purports to be a TLC Board member but was specifically replaced pursuant to the by-laws by the election of Adrian Baca to fill the seat on the Board at the Special Meeting of the Board held on July 14, 2020."[21]

---

[20]  15 U.S.C. § 1125(a).

[21]  *The Trial Lawyers College v. Gerry Spences Trial Lawyers College at Thunderhead Ranch*, Civil Action No. 1:20-cv-0080 (D. Wyo.) (ECF_102, at ¶ 9). As detailed above, this allegation is legally untenable, as the Wyoming state

Notably, Baca has been listed as a fact witness since the beginning of the underlying litigation.[22]

The underlying Defendants' allegations demonstrate directly why Baca is plainly a fact witness in the underlying litigation who likely has documents relevant to TLC's claims in his possession, custody, or control.   And although the underlying Defendants' document production has been incomplete, the piecemeal documents actually produced demonstrate this fact conclusively.

### D. The Subpoena to Adrian Baca

As detailed above, through discovery produced in the underlying action, TLC obtained documents strongly suggesting Baca has been and continues to be heavily involved in assisting Defendants' efforts to sow confusion among the TLC alumni and to market himself, the Sham Board, and the underlying Defendants as the "real" Trial Lawyers College. Accordingly, TLC served Baca with the subpoena on April 2, 2021.[23]

On April 14, 2021, after the deadline for compliance, Baca responded to TLC's subpoena, offering only nearly identical boilerplate objections for all sixteen

---

court held on April 13, 2021 that TLC's May 6, 2020 vote to reduce the number of directors—after which the underlying Defendants were not reelected to TLC's Board of Directors—to be a valid exercise of the TLC Board's authority. *See* **Exhibit 1** (Wyo. State Court Apr. 13, 2021 Order).

[22] *See* TLC's Initial Disclosures in the Underlying Litigation, attached hereto as **Exhibit 4** (TLC's Initial Disclosures).

[23] *See* March 30, 2021 Subpoena *Duces Tecum* to Adrian Baca, attached hereto as **Exhibit 5** (Subpoena *Duces Tecum*).

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITIONER'S MOTION TO COMPEL

requests.[24]   Baca did not at that time produce any documents responsive to TLC's lawfully issued subpoena, despite admitting some were in his possession, nor did he provide TLC with a privilege log detailing which documents were being withheld based on any asserted privilege.

### E. TLC's Attempts to Informally Resolve Baca's Objections

Prior to filing the instant Motion, and pursuant to this Court's Local Rules, TLC made several good faith attempts to meet and confer with Baca to resolve any issues he had with TLC's requests and to avoid unnecessarily burdening this Court; unfortunately, Baca has refused to confer with TLC.

On April 28, 2021, TLC responded to Baca's purported objections. In its April 28, 2021 response, TLC explained the relevance of its requests to the underlying action, disputed Baca's assertion that the documents could possibly be subject to any privilege, noted his failure to provide TLC with a privilege log, and set a discovery conference for May 5, 2021.[25]

On May 4, 2021, Baca advised that May 5, 2021 was not a convenient date for him to discuss his objections, and the parties agreed to reschedule the conference for May 13, 2021.[26]  On May 12, 2021, Baca again responded to TLC's

---

[24] *See* April 14, 2021 Letter from Adrian Baca, attached hereto as **Exhibit 6** (April 14, 2021 Letter).

[25] *See* April 28, 2021 Letter to Adrian Baca, attached hereto as **Exhibit 7** (April 28, 2021 Letter).

[26] Various E-Mail Correspondence with Adrian Baca, attached hereto as **Exhibit 8**, at pg. 1–2 (E-Mail Correspondence with Baca).

April 28, 2021 letter, making a "Pre-Discovery Conference Clarification," demanding that TLC comply with various pre-conditions before Baca would agree to confer.[27] Specifically, before he would agree to discuss his objections with TLC, Baca insisted that TLC "identify what [it] believe[s] [he] might have" that was not in TLC's possession and could not be obtained from the underlying Defendants; that TLC agree in advance of the conference "to compensate [him] for the cost of responding, lost income, and the cost associated with payment to a vendor for search, retrieval, and fees for review for privilege," that TLC provide him with evidence of his involvement with the underlying Defendants, and advising that only after TLC complied with Baca's pre-conference conditions, including "a full written response" to his May 12, 2021 letter, would he "do [his] best to schedule a prompt conference."[28]

Because Baca's concerns were best addressed at a telephonic conference, as this Court's Local Rules contemplate—and because Baca did not provide an alternative date for holding a discovery conference—TLC called Baca on May 13, 2021, as scheduled.  Although the parties spoke briefly on the phone, TLC agreed to review the five documents Baca produced, two of which were simply photographs of a Christmas wreath and a vial of facial serum, and would then

---

[27] *See* May 12, 2021 Letter from Adrian Baca, attached hereto as **Exhibit 9** (May 12, 2021 Letter).

[28] *Id.*

advise whether the production resolved the parties' discovery dispute.[29] On May 14, 2021, TLC provided Baca with a small sampling of the documents TLC had discovered demonstrating—at a minimum—that despite Baca's assertions to the contrary, he was a fact witness to the underlying litigation, requesting that Baca produce the remaining responsive documents in his possession, and again requesting a telephonic discovery conference take place on May 19, 2021.[30]  On May 17, 2021, Baca argued he was somehow "uninvolved with the party's split," that he "never held [him]self out as a board member of TLC," and stating that "[a]t this point, [he] viewe[ed] [his] obligations as complete."[31]

Hoping to avoid the need for judicial intervention, on May 20, 2021, TLC responded to Baca's May 17, 2021 letter, and despite Baca's refusal to speak with TLC, made clear its agreement to explicitly narrow its subpoena requests to exclude from production "any (1) communications sent to and on behalf of TLC; and (2) communications posted on the TLC listserv," but clarifying that TLC maintained its requests for "all posts to other listservs including the GSTLC listserv."[32] On May 23, 2021, with this Court's ten day deadline for conferring having long since

---

[29] *See* **Exhibit 8**, at pg. 8 (E-Mail Correspondence with Baca).

[30] **Exhibit 8**, at pg. 8 (E-Mail Correspondence with Baca); *see also* Documents Attached to TLC's May 20, 2021 E-mail to Baca, attached hereto as **Exhibit 10** (small sampling of discovery documents related to Baca).

[31] May 17, 2021 Letter from Adrian Baca, attached hereto as **Exhibit 11** (May 17, 2021 Letter).

[32] **Exhibit 8**, at pg. 12 (E-Mail Correspondence with Baca).

passed,[33] Baca reiterated his pre-conference conditions, stating that TLC's May 25, 2021 deadline for compliance with a subpoena served on April 2, 2021 was "unreasonable and impossible," and insisting that TLC provide him with a "detailed written response" to his pre-conference demands, including a pre-conference and pre-production agreement to pay him and an outside vendor an unspecified future sum, and that TLC somehow identify for Baca the specific documents Baca had in his possession that TLC believed were responsive to the categories of documents listed in TLC's subpoena, by no later than May 31, 2021.[34]

On May 25, 2021, TLC made its *fourth* attempt at holding a telephonic discovery conference with Baca, setting a conference for June 2, 2021 to discuss his objections to TLC's March 30, 2021 subpoena.[35]  On May 28, 2021, counsel for the underlying Defendants, Beth Kushner, advised that, as of May 28, 2021, she would be representing Baca and the other Sham Board members in connection with the subpoenas TLC issued to them.[36]  Accordingly, on June 1, 2021, TLC advised Kushner of the discovery conference it had previously scheduled with Baca for the

---

[33] *See* L.R. 37-1 ("[C]ounsel for the opposing party *must* confer with counsel for the moving party *within ten days after the moving party serves a letter requesting such conference*." (emphasis added)).  Here, TLC served Baca, a practicing attorney who at the time was unrepresented, with its letter detailing the basis for the dispute and requesting a discovery conference on April 28, 2021.  *See* **Exhibit 7** (April 28, 2021 Letter).

[34] **Exhibit 8**, at pg. 11 (E-Mail Correspondence with Baca).

[35] **Exhibit 8**, at pg. 10 (E-Mail Correspondence with Baca).

[36] **Exhibit 2**, at pg. 5 (E-mail Correspondence with Kushner).

next day, June 2, 2021.[37]  Kushner initially responded that she, "do[es] not respond to rudeness," and that she wished to make herself "absolutely clear," stating:

> I will not be speaking with you tomorrow.  It will be truly bush league for you to call my office, leave a voicemail, and then send an email saying that you left me a voicemail.   I can't stop you from dialing the phone and I can't stop you from leaving voicemails or sending emails. I can tell you—and am doing so now—that it will be a wasted effort (the previously noted and still regrettable Kabuki theater).[38]

Later that day, Kushner reiterated Baca's demand that TLC agree to his discovery conference pre-conditions, but stated, "It is academic because you will not be speaking with him."[39]   TLC responded to Kushner, advising that it was "still amenable to conducting a conference with [her] this week at any date or time [she was] available," but noting that TLC would not "be meeting [her and Baca's] pre-conference demands."[40]  After Ms. Kushner again declined TLC's attempt to schedule a discovery conference,[41] TLC was forced to file this Motion.

Accordingly, and in light of Baca's repeated delays and refusal to engage in a

---

[37] **Exhibit 2**, at pg. 13 (E-mail Correspondence with Kushner).
[38] **Exhibit 2**, at pg. 19 (E-mail Correspondence with Kushner).  Kushner's "kabuki theatre" comment relates to a discovery conference TLC attempted to hold with Kushner to discuss a separate subpoena also issued pursuant to the underlying litigation. *See* **Exhibit 2**, at pg. 1 (E-mail Correspondence with Kushner).
[39] **Exhibit 2**, at pg. 13 (E-mail Correspondence with Kushner).
[40] **Exhibit 2**, at pg. 8 (E-mail Correspondence with Kushner).
[41] **Exhibit 2**, at pg. 7 (E-mail Correspondence with Kushner).

good faith discussion of his boilerplate objections, TLC now moves this Court for an order directing him to produce all documents responsive to TLC's requests, excluding from production "any (1) communications sent to and on behalf of TLC; and (2) communications posted on the TLC listserv," as TLC previously agreed.[42]

## II.   LAW AND ARGUMENT

For over two months, TLC has attempted to obtain documents responsive to its subpoena without the need for judicial intervention to no avail. Because each request issued to Baca seeks documents relevant to TLC's claims in the underlying action, and Baca cannot bear his burden of proving that compliance with the subpoena either imposes an undue burden or that any documents responsive to TLC's requests are subject to any privilege, TLC's Motion to Compel should be granted in full.

### A. Legal Standard

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[43] The information sought "need not be admissible in evidence to be discoverable."[44] Thus, relevance, for purposes of discovery, is defined broadly,[45] and permits discovery of all "information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote

---

[42] **Exhibit 8**, at pg. 12 (E-Mail Correspondence with Baca).

[43] Fed. R. Civ. P. 26(b)(1).

[44] *Id.*

[45] Fed. R. Civ. P. 26(b)(1) ("Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery." (Notes of Advisory Committee on Rules—2015 Amendment)).

settlement."[46] The bar for relevancy is low and includes any matter "that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[47] [48] "Indeed," the discovery rules, "permit[] parties to 'fish' for evidence, provided that they cast a 'reasonably calculated' lure."[49]

"A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt . . . the court should be permissive."[50] Once relevancy is established, the party resisting discovery has the burden to show that the discovery should not be allowed.[51]

Rule 45(d)(3) sets forth the bases for a court to quash or modify a nonparty subpoena, explaining that the court "must quash or modify a subpoena that . . . subjects a person to undue burden."[52] Where, as here, the non-moving party offers only boilerplate objections as to the burden a discovery request might impose, courts

---

[46]   *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

[47]   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[48]   *Seattle Times*, 467 U.S. at 34.

[49]   *Sprint v. Nextel Corp. v. Ace Wholesale, Inc.*, No. 14-2119, 2015 WL 3649623, at *2 (D. Nev. June 10, 2015); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

[50]   *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680–81 (N.D. Cal. 2006) (quoting *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)); *see also* Fed. R. Civ. P. 26 ("[T]he court must be careful not to deprive a party of discovery to defend and prepare a case." (Notes of Advisory Committee on Rules—1983 Amendment)).

[51]   *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

[52]   Fed. R. Civ. P. 45(d)(3)(A)(iii).

routinely find such objections are ineffective.[53] "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."[54] Similarly, objections based on assertions of privilege that are not accompanied by either a privilege log or statement detailing the basis for the objection are deemed waived.[55]

### B. Analysis

TLC has propounded several requests for the production of documents to the underlying Defendants in this case. Reasonably believing there were significant gaps in Defendants' production and that the individuals the underlying Defendants' erroneously claim were elected to the TLC board likely had documents Defendants have either failed or refused to produce as well as additional documents relevant to TLC's claims in this case, TLC issued subpoenas to the Sham Board, including Baca.

Because Baca's boilerplate objections to TLC's subpoena were untimely and offered only vague, copied and pasted assertions substantiating his objections, Baca's objections have been waived. Moreover, Baca's refusal to confer with TLC until TLC agreed to various pre-conference stipulations is legally untenable and

---

[53] *See Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *Amazing Insurance, Inc. v. DiManno*, No. 19-1349, 2020 WL 5440050, at *6 (E.D. Cal. Sept. 10, 2020) ("Here, the nonparties asserted the same objections against each document request in the subpoenas. The objections are not tailored to the specific requests; they are copied and repeated verbatim. As such, they are boilerplate objections, which are tantamount to no objections at all.").

[54] *Walker*, 186 F.R.D. at 587.

[55] *See* Fed. R. Civ. P. 26(b)(5)(A); *Robinson v. City of Ark.*, No. 10-1431, 2012 WL 1674255, at *4–5 (D. Kan. May 14, 2012).

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITIONER'S MOTION TO COMPEL

19

serves only to underscore the frivolous nature of the objections that Baca, a practicing attorney, offers in refusing to comply with a lawfully issued subpoena. Because each of TLC's requests are relevant to the underlying litigation and narrowly tailored in subject matter and temporal scope, TLC respectfully submits its Motion should be granted in full.

### 1. Baca's Objections are Untimely and are Therefore Waived

Despite Baca's objections being nearly verbatim to those timely lodged by the other Sham Board members, Baca failed to raise any objections to TLC's subpoena until after the deadline to do so.  Federal Rule of Civil Procedure 45(d)(2)(B) provides that any objections to a properly issued subpoena *duces tecum* "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Having lawfully issued the subpoena commanding the inspection of the requested documents at 10:00 a.m. on April 14, 2021, Baca's objections, served on TLC after that time, are untimely and are therefore waived.[56]

### 2. Baca's Boilerplate Objections are Waived

On April 14, 2021, after the deadline for compliance, Baca responded to TLC's subpoena, offering only boilerplate objections that did not address any of TLC's requests with even a modicum of specificity.[57]  Instead, Baca asserted a litany

---

[56] *See, e.g.*, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

[57] **Exhibit 6** (April 14, 2021 Letter).

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITIONER'S MOTION TO COMPEL

of identical form objections to fifteen out of sixteen requests for production, including vague and inexplicable assertions that the requests were somehow irrelevant to the underlying lawsuit and that compliance would cause him an undue burden, without making any attempt to articulate the nature of that supposed burden. With respect to TLC's thirteenth request, Baca copied and pasted the same objections offered for the other fifteen requests, but this time adding that this request "potentially call[s] for information protected by the attorney-client privilege and the work product doctrine, and other applicable privileges and related doctrines, including the common interest doctrine and joint defense privilege."[58]

It is well-established that a court will not consider such frivolous, conclusory objections, like the ones Baca offered in his April 14, 2021 letter. Because "[h]ere, the nonparties asserted the same objections against each document request in the subpoenas," and those "objections are not tailored to the specific requests" and were instead "copied and repeated verbatim,"[59] such "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all."[60] As such, and particularly in light of Baca's failure to provide TLC with a privilege log,[61] Baca's objections to TLC's subpoena have been waived, and the responsive

---

[58] *Id.*
[59] *Amazing Insurance, Inc.*, 2020 WL 5440050, at *6.
[60] *Walker*, 186 F.R.D. at 587.
[61] *Robinson*, 2012 WL 1674255, at *4–5 (affirming the magistrate judge's finding that the objecting party's unjustifiable delay in substantiating the privilege objection, even though the objecting party did eventually provide a privilege log

1   documents must be produced.

2   ### 3.  *Baca's Pre-Conference Demands are Legally Untenable*

3

4       With respect to the subpoena issued to Baca, Baca takes the position that,

5   before he even discusses his vague objections with TLC (let alone before he

6   produces the remaining documents he admits are responsive to TLC's subpoena),

7

8   Rule 45 somehow requires TLC to agree in advance to pay him to review the

9   documents, along with an undisclosed amount to retain IT assistance. Baca's view

10  of the law is plainly untenable and should not be countenanced by this Court.

11

12      Despite the fact that Rule 45 allows *the court* to shift to the moving party the

13  portion of the compliance expenses the court deems necessary to render the

14  responding third-party's expenses non-significant[62] (and even then, "[t]he court is

15
16  not required to fix the costs in advance of production"[63]), Baca has expressly and

17  repeatedly conditioned his willingness to even speak with TLC's counsel on TLC's

18
19  pre-conference and pre-production agreement to pay him as well as an IT firm. Not

20  only is Baca not a disinterested third-party, such that he is not entitled to any

21  expenses (let alone those that this Court might later determine were "significant"),

22

23  because "it was submitted weeks after the response was due and the logs fail to
    indicate the requests for production to which these documents and objections
24  relate"). Here, Baca has not provided any privilege logs at all.

25  [62] *See, e.g.*, 8B Wright, Miller & Marcus, Federal Practice & Procedure, § 2288
    (3d ed. 2010 and supp.) (explaining that it is "for the court to decide what
26  amount is proper" in evaluating a request for expenses); *Cornell v. Columbus
    McKinnon Corp.*, No. 13-2188, 2015 WL 4747260, at *1 (N.D. Cal. Aug. 11,
27  2015).

28  [63] Fed. R. Civ. P 45 (Notes of Advisory Committee on Rules—1991 Amendment).

Rule 45 does not require TLC to first agree to pay all expenses, reasonably incurred or not, before complying with a lawfully-issued subpoena.[64]  Particularly in light of the fact that Baca has waived his objections on grounds of untimeliness and lack of specificity, Baca should not be permitted to hide behind his legally baseless pre-conference demands for his failure to timely comply with a lawfully issued subpoena.

### 4.  TLC's Requests are Relevant and Narrowly Tailored

TLC's requests are relevant to its claims in the underlying action. As a result, Baca must articulate, with specificity, why the documents requested cannot be produced. This he cannot do.

TLC made sixteen requests for production of documents, all of which are narrowly tailored and relevant to TLC's claims in the underlying action. With these requests, TLC seeks to discover, among other things:

1.  When the idea to create a competing entity was formed, by whom, and for what purpose;

2.  Why the New Listserv was created, when, by whom, and at whose direction;

3.  The underlying Defendants' efforts to coordinate with third parties, such as Baca, to control the messaging reaching TLC's alumni through that listserv;

---

[64]  *See* Fed. R. Civ. P. 45(2)(B)(ii); Fed. R. Civ. P 45 (Notes of Advisory Committee on Rules—1991 Amendment) ("The court is not required to fix the costs in advance of production."); *see also, e.g.*, *Cornell*, 2015 WL 4747260, at *5.

4.  How the underlying Defendants accessed TLC's confidential computer files without authorization;

5.  How the TLC alumni's information was accessed, disseminated, and utilized, and who orchestrated the use of this information and for what purposes;

6.  Any financial or other formal relationship Baca has or had with any of the underlying Defendants demonstrating his interest, financial or otherwise, in assisting the underlying Defendants in their various unlawful acts;

7.  Documents and communications related to any seminars or events planned instructional events the Sham Board intends to hold at the Thunderhead Ranch, where TLC operated for twenty-five years, as well as events they intent to hold virtually, or elsewhere, as Baca's e-mails demonstrate; and

8.  The extent of Baca's involvement in the underlying Defendants' wrongdoing.

Although some requests may contemplate the inclusion of documents and correspondence that might be in the underlying Defendants' custody and control, to the extent such documents might overlap, TLC has requested such documents from the underlying Defendants and reasonably believes their production was incomplete. The documents TLC seeks through its subpoena to Baca, a plainly interested third party, relate directly to TLC's claims against Defendants in the underlying action. Moreover, the requests are narrowly tailored in temporal scope in that TLC's requests are limited to responsive documents created, sent or received

1    between December 19, 2019 (the date the dispute that ultimately lead to the split of

2
     the TLC Board took place) and the present. The responsive documents in Baca's
3
4    possession are discoverable and should be produced.

5    **III.**    **CONCLUSION**

6           Based upon the foregoing and the relevant case law, TLC moves this Court to
7
8    order Baca to produce all documents responsive to TLC's subpoena.

9           DATED:      June 9, 2021

10
                                              Respectfully submitted,
11
12                                            GORDON & REES LLP

13                                            BY:    */s/ Allison L. Jones*
                                                     ALLISON L. JONES
14

15                                            *ATTORNEY FOR PETITIONER, THE TRIAL*
                                              *LAWYERS COLLEGE*
16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of June, 2021, I caused true and correct copy of the foregoing document to be served on Mr. Adrian Baca and provided a true and correct copy of the foregoing document to Mr. Baca's counsel, Ms. Beth Kushner, via electronic mail (BKUSHNER@vonbriesen.com).

Sylvia Durazo